## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1503012584 |
| | ) | |
| | ) | |
| | ) | |
| JERALD A. PASTRO, JR., | ) | |
| | ) | |
| Defendant. | ) | |

Date submitted: January 19, 2018
Date decided: April 17, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR APPOINTMENT OF COUNSEL AND MOTION FOR POSTCONVICTION RELIEF

Sonia Augusthy, Esquire, Deputy Attorney General, Delaware Department of Justice, 820 N. French St. 7th Floor, Wilmington, Delaware, 19801.  Attorney for the State.

Jerald A. Pastro, Jr., *pro se*, Defendant.

**MANNING**, Commissioner:

This 17th day of April 2018, upon consideration of defendant Jerald A. Pastro Jr.'s Motion for Postconviction Relief ("Motion"), and Motion for Appointment of Counsel, I find and recommend the following:

## Procedural History

Mr. Pastro pled guilty to Assault Second Degree, Burglary First Degree, and Possession of a Deadly Weapon During the Commission of a Felony on July 7, 2016. Following a pre-sentence investigation, Mr. Pasto was sentenced on September 16, 2016, to eight years of unsuspended Level Five time, followed by decreasing levels of probation. Mr. Pastro did not appeal his conviction or sentence to the Delaware Supreme Court. Mr. Pastro did, however, file a motion for sentence reduction/modification on October 7, 2016. That motion was denied by the Honorable Richard R. Cooch on October 12, 2016.[1] Mr. Pastro subsequently filed two additional motions for sentence modification which were also denied on January 19, 2017 and June 14, 2017.

On August 30, 2017, Mr. Pastro filed the instant Motion pursuant to Superior Court Criminal Rule 61. The Motion was subsequently referred to the undersigned commissioner and a briefing schedule was issued on September 13, 2017. Trial Counsel filed an Affidavit responding to particular claims made by Mr. Pastro on

_____

[1] D.I. #42.

1

August 24, 2017.[2] The State filed its Response on December 13, 2017. Upon review of the various filings in this matter I deemed it unnecessary to hold an evidentiary hearing based on the nature of Mr. Pastro's allegations. Finally, I requested and reviewed the Presentence Report.

Mr. Pastro's claims for postconviction relief, quoted verbatim, are as follows:

Ground One: Ineffective Counsel-failure to properly investigate defendant's case. Defense Counsel repeatedly told me wrong charges and minimum mandatory time during one-on-one conversations and at my sentencing hearing, and at the time of me signing the guilty plea gave me incorrect information about Level Five time.

Ground Two: Ineffective Counsel-failure to properly investigate mitigating factors. During sentencing hearing, and one-on-one conversations I was repeatedly made to look as if I was someone who failed school, and was slow mentally, yet I graduated high school 6 months before, proving he had not bothered to look into my cases mitigating factors, and further more causing prejudice towards me in sentencing, and ruining all my family support systems with untrue facts.

Ground Three: Coerced into plea. I was told I would receive 4-5 years if I accept the plea offer and that is I didn't I would receive a minimum mandatory of 5 years, and that I would lose trial, when my minimum mandatory was 4 years, not 5. Causing me to enter plea unknowingly and involuntarily.

[2] Trial Counsel appears to have missed the grounds raised on the back page of Pastro's Motion, or the copy of the Motion he received was not double-sided. In any event, a further response from Trial Counsel is not needed at this time for me to complete this report.

Ground Four:     Ineffective Counsel-failure to comply with requests of defendant. I asked my attorney to place a motion for suppression in to suppress my interrogation statement due to the video of my interrogation showing me in a intoxicated state of mind, and he refused to do so which if it was accepted would have changed my decision to go to trial.

Ground Five:     Ineffective Counsel-failure to investigate mitigating factors. The Defense Counsel not only refused to looking into past placements, and psychological evaluations from said placements (Rockford, Brentford RTC, Mount Manor, Aquila, Crossroads and Harmonious Minds) but having legal reason to apply for Mental Health Court, refused, saying I'll have a mental health judge on probation, when there were clear mitigating factors to be placed in Mental Health Court.

Ground Six:      Ineffective Assistance Counsel-failure to investigate mitigating factors. The Defense Counsel's failure to investigate into the defendant's mitigating factors past pre-sentence report, knowing the abuse and stating the knowledge of the childhood abuse, and the treatments, and schooling, shows the failure to investigate mitigating factors, that because of lack of research, important facts that could have returned a different sentence were left unsaid.

## Facts

According to the Affidavit of Probable Cause, the facts in this case are as follows. On March 19, 2015, police responded to victim Warren Kirkpatrick's residence in reference to a stabbing that had just occurred. Upon arrival, police were advised by Warren that Pastro and another unknown person (later identified as Jeffery Davidson) had knocked on his door and asked to use his cellphone. While

inside his house, Jeffery asked for a bottle of water and then stabbed Warren in the back of the neck and the top of his head with a large kitchen knife. Jeffery then stood over Warren holding the knife placing him in fear for his life. Jeffery then called for his brother before he and Pastro fled the residence. After his arrest, Pastro gave a post-Miranda statement admitting that he and Jeffery had planned to rob someone that evening and had target Warren's house. Pastro also stated that he did not think Jeffery would actually go thru with the plan once inside. Finally, Pastro's younger brother, Christian, was also interviewed by police. Christian stated that he had heard Jeffery talking to Pastro about their plan earlier in the evening. Christian also stated that he had observed Pasto and Jeffery running from Warren's house earlier that evening when he went to see what they were doing. According to the State, Pastro was personally known to Warren prior to the assault.

### Legal Standard

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[3] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably

---

[3] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

4

competent, while the second prong requires the defendant to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[4]

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[5] Most germane to this case, mere allegations of ineffectiveness will not suffice—a defendant must make and substantiate concrete allegations of actual prejudice.[6] An error by defense counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[7]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be viewed from his or her perspective at the time decisions were being made.[8] A fair assessment of attorney performance requires that

---

[4] *Id.*

[5] *Strickland*, 466 U.S. at 697.

[6] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[7] *Strickland*, 466 U.S. at 691.

[8] *Id.*

5

every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided.[9]

## Analysis

The procedural requirements of Rule 61 must be addressed before considering the merits of any argument.[10] Pastro's Motion was timely filed and is not repetitive, thus satisfying the procedural requirements of Rule 61. Therefore, the Motion should be decided on its merits.

Ground One: Pastro argues, in essence, that Counsel failed to investigate his case and gave him incorrect information concerning his charges and the penalties he faced by pleading guilty. As to his first point, Pastro's allegation is unsupported by any specific examples of what Counsel failed to do or should have done that would have reasonably changed the outcome his case. Lacking concrete examples of deficient performance, this claim must fail. As to the second point, Pastro's vague allegations are belied by the record. The guilty plea paperwork was correctly completed by Counsel and indicated the correct sentence ranges for the charges to which Pastro pled guilty. Even if Counsel had inadvertently given Pastro incorrect information prior to the plea being executed, any such error was cured when the

---

[9] *Id.*

[10] *See Younger*, 580 A.2d at 554.

6

paperwork was completed and the guilty plea entered; additionally, Pastro was certainly free to change his mind at any time. During the guilty plea colloquy, Pastro indicated that he was aware of what he was doing and that no one had forced him to accept the State's plea offer.[11]

Ground Two: Pastro's complaint that Counsel failed to properly investigate mitigating factors is also belied by the record. Counsel submitted a number documents outlining Pastro's psycho-social history, including a very detailed Forensic Mental Health Examination conducted by DPC.[12] The presentence report contains a detailed outline of Pastro's history that Counsel and the State were both well aware of. The fact that Pastro's "family support systems" were "ruined" by Counsel's presentation at sentencing, if true, is unfortunate, but was undoubtedly an unintended consequence of Counsel's advocacy on Pastro's behalf. Simply put, sometimes it is necessary for counsel to blame the family in an effort to get his or her client a shorter jail sentence.

Ground Three: Pastro argues that he was "coerced" into pleading guilty and that his plea was made "unknowingly and involuntarily." Again, Pastro's claims are not supported with any specific examples of how he was coerced. Furthermore, his

---

[11] D.I. #60, Transcript at 4-6.

[12] D.I. #24.

7

claims are belied by the transcripts of his guilty plea colloquy where he failed to voice any objection or express any of his concerns to the presiding judge.

Ground Four: Pastro argues that Counsel was ineffective for not moving to suppress his statement to police because he was intoxicated at the time he made the statement. Even assuming that Pastro was intoxicated at the time of the statement, and that Counsel was deficient for having not moved to suppress, I do not find that the *Strickland* standard has been met. Considering the evidence in this case—namely that the victim knew Pastro personally—and an eyewitness observed Pastro and Jeffery fleeing from the scene after having overheard them discussing robbing someone, I do not find there is a reasonable probability of a different outcome had Counsel moved to suppress. Even without Pastro's statement, there was more than sufficient evidence to support a conviction on all counts of the indictment.

Ground Five: Pastro claims that Counsel was ineffective for failing to look into his past mental health treatment and placements and for not applying for Mental Health Court. Yet again, Pastro's claims are belied by the record—there was ample and extensive evidence of Pastro's mental health issues before the court at the time of sentencing. In fact, much of the presentence report is devoted to Pastro's family and social history; the presentence author specifically noted that much of Pastro's mental health and substance abuse problems resulted from his abusive childhood. Additionally, the decision to enter a defendant into the mental health court program

8

is one made by the State, not Counsel, and is usually reserved for low level and non-violent crimes. Counsel may have correctly advised Pastro that he might have a mental health court judge while on probation—that is certainly a possibility—but it is nothing that effected the sentence Pastro actually received.

Ground Six: Pastro argues that Counsel failed to investigate mitigating factors that "could have returned a different sentence [but] were left unsaid." As has been previously discussed, the Court was presented with a considerable amount of information regarding Pastro that potentially mitigated the sentence he received. What Pastro has left unsaid is exactly what Counsel could have, or should have, presented to the Court—his claim lacks concrete examples. Finally, the burden under *Strickland* is that of a reasonable likelihood of a different outcome—not that such evidence "could" have resulted in a difference sentence as Pastro argues. Pastro has presented nothing in his Motion that had it been presented to the sentencing judge, as far as I can tell, would have resulted in a lesser sentence.

## Motion for Appointment of Counsel

Finally, Pastro filed a motion for appointment of counsel shortly after he filed the instant Motion. This request should be denied as he has failed to meet the requirements of Rule 61(e)(2)—i.e. Pastro's conviction was never affirmed by the Delaware Supreme Court on direct appellate review, the Motion does not set forth

9

any substantial claims, and no specific or exceptional circumstance warrant appointment of counsel.

## Conclusion

Outside of Pastro's conclusory allegations, there is nothing in the record to indicate that he was not properly represented or advised by his lawyer before he entered his guilty plea. The *only* fact that Pastro has established to any degree of certainty is that he is now unhappy with his decision to have pled guilty.

Accordingly, I conclude that Pastro's claims of ineffective assistance of counsel are meritless and that his Motion should be **Denied**.

**IT IS SO RECOMMENDED.**

Bradley V. Manning,
Commissioner

oc:    Prothonotary
cc:    Defendant via first class mail, counsel via e-mail

10